UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CIT COMMUNICATIONS FINANCE CORPORATION | CIVIL ACTION NO. 00-2690-A |
| -vs- | JUDGE DRELL |
| WEBSTER PARISH SCHOOL BOARD and ICON COMPUTING, INC. | MAGISTRATE JUDGE KIRK |

R U L I N G

Background

Before the Court are summary judgment motions filed by plaintiff, CIT Communications Finance Corporation ("CIT") (Document No. 155) and by third party defendant, Avaya Inc., successor for purposes of this case to Lucent Technologies Inc., ("Avaya" or "Lucent") (Document No. 194). Also pending is the re-urged motion for summary judgment of defendant, Zurich Specialties (London) Limited ("Zurich") (Document No. 175). In a report and recommendation signed May 20, 2005, Magistrate Judge James D. Kirk suggested CIT's motion for summary judgment be denied on the merits; *sua sponte* summary judgment be granted in favor of the Webster Parish School Board ("WPSB" or "School Board"); and Avaya's motion for summary judgment as well as Zurich's re-urged motion for summary judgment both be denied as moot. (Document No. 216.) Objections

to the report and recommendation were filed, and oral argument was held on July 22, 2005.

Once in a while a case comes along that, to an unusual degree, peaks the interest of all involved, including the judicial officer(s) charged with resolving the matter. This is one of those cases. While the legal concepts are not all that difficult, the challenge lies in navigating the factual quagmire created by multiple players at multiple levels. True, there are written contracts to go by, through which computers were supposed to be supplied to the Webster Parish School Board, an entity that, undoubtedly, had as its main interest the education of the children under its tutelage. The initial price, more than $900,000, was high. But the benefits to be realized by the students would also have been substantial.

Unfortunately, the entire transaction went awry because, quite frankly, there were human beings involved. For better or worse, human beings act for all kinds of reasons. Some people deliberately manipulate otherwise legitimate situations, and some people just make mistakes. This case contains those elements and more.

Enter a small company, Icon Technologies, Inc. ("Icon"), which had local political and business connections from which a national corporation like Avaya, interested in developing a program of technology sales to Louisiana schools, could profit enormously. Although this suit involves the Webster Parish School Board, other school boards, such as those in Orleans Parish and St. James Parish,

2

were also solicited. Lucent, Avaya's predecessor, was a known and trusted industrial name. Icon, however, was developing a reputation that left its customers wary. The financier, CIT, successor to Newcourt Credit Group USA, Inc. and/or Newcourt Credit Group, Inc. ("Newcourt"), of which Lucent Technologies Product Finance ("LTPF") was some part, also, presumably, wanted to make money on the proposed deals. Through business arrangements and obligations which are not yet totally clear from the record, LTPF would front the funding needed by the school boards, as it did in Webster Parish.

The problem in the instant case is that LTPF paid Icon $848,683.45, ostensibly to provide the computers and related equipment the WPSB desired. However, Icon did not use the money for that purpose. Rather, it allegedly spent the funds on unrelated corporate debts and, perhaps, on other things. It is not clear which company was to "purchase" the computers. CIT blames Icon, but at least one document shows the actual responsibility for purchasing the equipment fell to CIT's predecessor, Newcourt/LTPF. One of the only facts upon which all the parties can agree is that today, more than five years after the money was transferred to Icon, the WPSB still has not received any computers. This case, at its core, is about who bears the risk of loss in such a situation. Because it believes it cannot get its money back from a now-defunct Icon, CIT contends the School Board must pay for the non-existent computers.

3

For CIT's motion for summary judgment, the ultimate issue is whether an erroneous certification by the School Board that the computers had been delivered, which document was executed as part of a package of paperwork concerning the entire transaction and upon which LTPF claims it based its payment to Icon, is sufficient to impose liability on the WPSB (under contract or tort) for reimbursement of the funds paid, even though the School Board never received the computers. As to Avaya's motion for summary judgment, the question is whether there is a genuine issue of material fact regarding the School Board's potential claim to recover from Avaya all or part of any judgment CIT might obtain. With Zurich's re-urged motion for summary judgment, the issue is insurance coverage.

The foregoing summary only skims the surface of the complex pool of facts that appear in the more than 2,000 pages of depositions and documents submitted by the parties and reviewed by the Court. The attorneys have litigated, and litigated, and litigated. Still, there is, sadly, no end in sight. The Court would be remiss if it did not admit that the report and recommendation of Magistrate Judge Kirk is compelling in its suggestion to grant *sua sponte* summary judgment for the School Board. The equitable considerations in the School Board's favor are many, not the least of which concerns avoiding the distasteful possibility that the citizens of Webster Parish could spend $800,000 in public funds and have nothing to show in return.

There is little doubt this case will be extremely difficult for a jury to understand. Yet, at this point, the matter is not here for exploration of the challenges presented by a jury trial or for resolution of the equities. Rather, the Court must rule on the motions filed by CIT, Avaya, and Zurich using the well-established standards for summary judgment. If there are genuine issues of material fact, those issues mandate denial of the motions.

Considering the evidence, representations of counsel, and recommendations of the magistrate judge, and for the reasons that follow, the pending motions of CIT, Avaya, and Zurich are DENIED. At this time, the Court foregoes the opportunity to grant *sua sponte* relief by entering summary judgment in favor of the Webster Parish School Board.

Legal Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the nonmoving party, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The moving party must initially show "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party need only point out this absence; it "need not negate the elements of the nonmovant's case." Little

v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).    Allegations in the pleadings, naked assertions of factual disputes, and conclusory allegations are not sufficient. *See* Fontenot v. Upjohn Co., 780 F.2d 1190, 1195-96 (5th Cir. 1996); Solo Serve Corp. v. Westowne Assoc., 929 F.2d 160, 164 (5th Cir. 1991); and Herrera v. Millsap, 862 F.2d 1157, 1160 (5th Cir. 1989). After such a showing, the nonmoving party must come forward, after adequate time for discovery, with "specific facts" establishing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e) and Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

CIT's Motion for Summary Judgment

The crux of CIT's argument is that its predecessor in interest, LTPF, paid Icon in excess of $800,000 in reliance upon the "State and Local Government Commencement Certificate" executed by the WPSB on April 3, 2000, through which the School Board attested it had received and accepted the computers at issue. Specifically, CIT alleges, "WPSB's negligent and incorrect certification to CIT that the Equipment had been delivered and installed caused CIT damage in the amount of $848,683.45, together with interest . . . ." (Document No. 155, p. 6.)

The WPSB does not deny that the Commencement Certificate was improperly signed on April 3, 2000. However, defendant contends CIT's predecessor was aware the computers had not actually been delivered when it forwarded the funds to Icon. Accordingly, the School Board argues CIT bears responsibility for the erroneous payment to Icon. Under these circumstances, the

6

timing of CIT's imputed knowledge concerning delivery of the computers becomes a critical issue.

David Howson, the government finance manager for CIT, testified in his September 14, 2004 deposition that he was responsible for facilitating the credit approval process and preparing the financing documents executed by the WPSB in April 2000. Additionally, he received the signed documents and participated in funding the transaction. (Howson deposition, pp. 6-21.) Mr. Howson explained that in April 2000 he believed the computers were in place, "[b]ecause the customer gave me a written confirmation that they were." (Howson deposition, p. 110.) This testimony squares with CIT's arguments that such notice was the usual triggering event for payment. Mr. Howson also stated he first learned in August or September 2000 that the computers had not been delivered. (Howson deposition, p. 30.)

However, Kenneth Sills, a partner in the law firm of Hammonds & Sills, testified in his December 9, 2004 deposition that in March 2000 he began reviewing documents and preparing a letter on behalf of WPSB which LTPF would use to complete the financing arrangement for the computer purchase at issue. In connection with his work, Mr. Sills spoke with David Howson at some point between March 13 and March 23, 2000. During that conversation, Mr. Sills passed his awareness that the computers were not going to be delivered until sometime in the summer of 2000 along to Mr. Howson. (Sills deposition, pp. 6-8;

7

48-49; and 72.) This testimony, if believed, would negate entirely CIT's arguments about the exclusivity of, and usual protocol related to, the notice.

Because the Court finds this factual dispute is sufficient to preclude summary judgment (at least regarding CIT's fraud and/or negligent misrepresentation, detrimental reliance, and conspiracy claims), it is not necessary to address the numerous other potential issues raised in the parties' submissions, such as questions of agency, applicability of the contracts, and inconsistencies between the handling of the WPSB transaction and other similar financing arrangements.

Accordingly, CIT's motion for summary judgment (Document No. 155) is DENIED.

Avaya's Motion for Summary Judgment

Avaya, as successor to Lucent, has been named by WPSB as a third party defendant, against whom the School Board will seek a judgment if CIT's underlying suit is successful. (Document No. 19.) WPSB argues, among other things, that Lucent, as owner of a controlling interest in LTPF, was responsible for the transfer of funds to Icon, and that the totality of the circumstances shows it was reasonable for the School Board to interpret the relationship between Lucent, LTPF, and Icon as some type of integrated business enterprise. In its motion for summary judgment, Avaya contends it could not be liable to the School Board under any set of circumstances, because Avaya's predecessor, Lucent, did

not have a partnership, partnership by estoppel, or joint venture arrangement with Icon; Icon had no actual authority to bind Lucent; Lucent did not clothe Icon with apparent authority; and the School Board was not an "innocent third party" with regard to the computer transaction.

In support of its position, Avaya refers to its Statement of Uncontested Facts to emphasize, among other things, that representatives of Lucent had very few communications with WPSB, and Icon's actual authority was clearly outlined in the Referral Agent Agreement.

Evidence presented by the School Board, however, shows the relationships between the entities were not clear to third parties. In his May 2003 deposition, WPSB Superintendent Richard Noles testified that when he signed the Master Lease Purchase Agreement on April 3, 2000, he had previously interacted with representatives of Lucent and Icon in the same meetings, and he did not differentiate between the two companies. Mr. Noles also explained that he thought Lucent and Icon were working together to obtain the computers, and that he might not have consented to enter into any agreement with Icon unless Lucent had been involved. (Noles Deposition, pp. 37-38, 48, 178, and 188.)

Linda Williams, the technology coordinator for WPSB at the relevant time, testified in her May 2003 deposition that she understood Lucent owned 51% of Newcourt/a division of Newcourt, and that she used the names "Lucent" and "LTPF" interchangeably in late 1999 and early 2000. (Williams Deposition, pp. 54-

55, 145, and 321.) In his November 2004 deposition, Bobby Curtis, an Icon representative, discussed Lucent's role in organizing the team that prepared the materials for distribution to the schools. Mr. Curtis further explained he did not know if it would have been reasonable for the WPSB to draw a distinction between Lucent and LTPF, in light of a conference call Mr. Curtis attended in the presence of a Lucent representative (Mr. Bluemer) and Ms. Williams. (Curtis deposition, pp. 45-50, and 111-114.) The record also contains documents showing payments anticipated from Lucent to Icon, from Icon to Lucent, and from LTPF to Lucent secondary to the WPSB computer transaction, as well as paperwork substantiating the "integrated" nature of the presentation the companies prepared for submission to school boards. (*See* "Avaya-produced Documents, Bates #s A00001 - A00468.")

These references, in addition to the various factual issues concerning Avaya's potential liability as outlined by Magistrate Judge Kirk in his report and recommendation, preclude summary judgment in favor of Avaya at this time. Accordingly, the motion for summary judgment filed by Avaya (Document No. 194) is DENIED.

Zurich's Re-Urged Motion for Summary Judgment

The Court finds no basis in Zurich's re-urged motion for summary judgment to modify the April 8, 2004 Ruling denying Zurich's prior motion for summary

judgment on the same issues.  (Document No. 142.)  Accordingly, the re-urged

motion for summary judgment filed by Zurich (Document No. 175) is DENIED.

Conclusion

The motions for summary judgment and the re-urged motion for summary

judgment do not establish the movers are entitled to judgment as a matter of law.

Therefore, CIT's motion for summary judgment (Document No. 155), Avaya's

motion for summary judgment (Document No. 194), and Zurich's re-urged motion

for summary judgment (Document No. 175) are DENIED.  The Court elects not to

grant *sua sponte* summary judgment in favor of the School Board at this time.


SIGNED on this 12th day of August, 2005, at Alexandria, Louisiana.


_____
Dee D. Drell
United States District Judge